IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PINK FLOYD (1987) LIMITED,

    Plaintiff,                                                                    Civil Action No.: 1:23-cv-16864

v.

THE OWNER AND/OR OPERATOR OF
FLOYDOLOGY.COM,

    Defendant.

## COMPLAINT

Plaintiff, Pink Floyd (1987) Limited ("PFL" or "Plaintiff"), hereby files this Complaint against the owner and/or operator of floydology.com ("Defendant"), and for its Complaint hereby alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since the Defendant directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial internet store operating under the domain name ("Defendant Domain Name") identified as floydology.com (the "Defendant Internet Store"). Specifically, Defendant is reaching out to do business with Illinois residents by operating a commercial, interactive internet store through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademarks. The Defendant has targeted sales from Illinois residents by operating an online store under the

Defendant Domain Name that offers shipping to the United States, including Illinois, accepts payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. The Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by Plaintiff to combat an online counterfeiter who trades upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's PINK FLOYD Trademarks, which are covered by U.S. Trademark Registration Nos. 2,194,702; 3,247,700; 4,236,037; 5,521,572; 6,514,317; 5,435,348; 6,784,353 and 6,862,397 (collectively, the "PINK FLOYD Trademarks"). The registrations are valid, subsisting, unrevoked, and uncancelled. The registrations for the trademarks constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b). A genuine and authentic copy of each U.S. federal trademark registration certificate for each of the PINK FLOYD Trademarks is attached as **Exhibit 1**.

4. In the past, PFL was able to police its marks against identifiable infringers and counterfeiters. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken. The company has availed itself of takedown procedures to remove infringing products, but these efforts have proved to be an unavailing game of whack-a-mole against the mass counterfeiting that is occurring over the internet. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed Plaintiff and its ability to police its rights against the hundreds of anonymous defendants which are selling illegal counterfeits at prices substantially below an original:

ORIGINAL



COUNTERFEIT



https://floydology.com/collections/clothes?orderby=popularity

5. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over its reputation and goodwill as well as the quality of goods bearing the PINK FLOYD Trademarks. The rise of eCommerce as a method of supplying goods to the public exposes brand holders and creators that make significant investments in their products to significant harm from counterfeiters:

> Counterfeiting is no longer confined to street-corners and flea markets. The problem has intensified to staggering levels, as shown by a recent Organisation for

3

> Economic Cooperation and Development (OECD) report, which details a 154 percent increase in counterfeits traded internationally — from $200 billion in 2005 to $509 billion in 2016. Similar information collected by the U.S. Department of Homeland Security (DHS) between 2000 and 2018 shows that seizures of infringing goods at U.S. borders have increased 10-fold, from 3,244 seizures per year to 33,810.
>
> …
>
> The rise in consumer use of third-party marketplaces significantly increases the risks and uncertainty for U.S. producers when creating new products. It is no longer enough for a small business to develop a product with significant local consumer demand and then use that revenue to grow the business regionally, nationally, and internationally with the brand protection efforts expanding in step. Instead, with the international scope of e-commerce platforms, once a small business exposes itself to the benefits of placing products online — which creates a geographic scope far greater than its more limited brand protection efforts can handle — it begins to face increased foreign infringement threat.
>
> . . .
>
> Moreover, as costs to enter the online market have come down, such market entry is happening earlier and earlier in the product cycle, further enhancing risk. If a new product is a success, counterfeiters will attempt, often immediately, to outcompete the original seller with lower-cost counterfeit and pirated versions while avoiding the initial investment into research and design.
>
> . . .
>
> Counterfeiters have taken full advantage of the aura of authenticity and trust that online platforms provide. While e-commerce has supported the launch of thousands of legitimate businesses, their models have also enabled counterfeiters to easily establish attractive "store-fronts" to compete with legitimate businesses.

*See Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit 2**) at 4, 8, 11.

      6.      Not only are the creators and brand holders harmed, but the public is also harmed:

> The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e-commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers.
>
> The President's historic memorandum provides a much warranted and long overdue call to action in the U.S. Government's fight against a massive form of illicit trade

that is inflicting significant harm on American consumers and businesses. <u>This illicit trade must be stopped in its tracks</u>.

*Id.* at 3, 4. (Underlining in original).

7. As shown above, Defendant is using a fake online storefront designed to appear to be selling genuine Plaintiff products, while selling inferior imitations of Plaintiff's products. Plaintiff is filing this action to combat Defendant's counterfeiting of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing unauthorized PINK FLOYD products over the internet.

8. This Court has personal jurisdiction over the Defendant, in that the Defendant conducts significant business in Illinois and in this judicial district, and the acts and events giving rise to this lawsuit of which the Defendant stands accused were undertaken in Illinois and in this judicial district. In addition, the Defendant has offered to sell and ship infringing products into this judicial district.

## THE PLAINTIFF

9. Pink Floyd (1987) Limited is the business entity for the iconic band PINK FLOYD. It is a limited company having its principal place of business in the United Kingdom. PINK FLOYD has been in existence since 1965 and was inducted into the Rock & Roll Hall of Fame in 1996. PINK FLOYD remains active and is an official source of authentic PINK FLOYD products.

10. Plaintiff is engaged in the business of manufacturing, distributing and retailing high-quality concert merchandise including within the Northern District of Illinois District (collectively, the "Plaintiff Products") under the federally registered PINK FLOYD Trademarks. Defendant's sales of counterfeit products in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

11. Plaintiff's brand, symbolized by the PINK FLOYD Trademarks, is a recognized symbol of high-quality merchandise. The PINK FLOYD Trademarks are distinctive and identify the merchandise as goods from Plaintiff. The registrations for the PINK FLOYD Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the PINK FLOYD Trademarks pursuant to 15 U.S.C. § 1057 (b).

12. The PINK FLOYD Trademarks have been continuously used and never abandoned.

13. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the PINK FLOYD Trademarks. As a result, products bearing the PINK FLOYD Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

**THE DEFENDANT**

14. Defendant is an individual and/or business entity who, upon information and belief, likely resides and/or operates in Asia or other foreign jurisdictions. Defendant conducts business throughout the United States, including within Illinois and in this judicial district, through the operation of the fully interactive commercial website and online marketplaces operating under the Defendant Domain Name. The Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit PINK FLOYD products to consumers within the United States, including Illinois and in this judicial district.

**THE DEFENDANT'S UNLAWFUL CONDUCT**

15. The success of the PINK FLOYD brand has resulted in its significant counterfeiting. Defendant conducts its illegal operations through a fully interactive commercial website operating under the Defendant Domain Name. The Defendant targets consumers in the

6

United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois.

16. The Defendant intentionally conceals its identity and the full scope of its counterfeiting operations in an effort to deter Plaintiff from learning Defendant's true identity and the exact interworking of Defendant's illegal counterfeiting operations. Through its operation of the Defendant Internet Store, Defendant is directly and personally contributing to, inducing and engaging in the sale of Counterfeit Products as alleged, oftentimes as partners, co-conspirators and/or suppliers. Upon information and belief, Defendant is working to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products. For example, the website operated at the Defendant Domain Name provides no physical address, phone number, or other identifying information.

17. Upon information and belief, at all times relevant hereto, the Defendant in this action has had full knowledge of Plaintiff's ownership of the PINK FLOYD Trademarks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

18. Upon information and belief, Defendant facilitates sales by designing the Defendant Internet Store operating under the Defendant Domain Name so that it appears to unknowing consumers to be an authorized online retailer.

19. Defendant in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendant will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website

hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring takedown demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2021 U.S. Customs and Border Protection report on seizure statistics indicated that e-commerce sales accounted for 13.3% of total retail sales with second quarter of 2021 retail e-commerce sales estimated at $222.5 billion. U.S. Customs and Border Protection, *Intellectual Property Right Seizure Statistics*, FY 2021 (https://www.cbp.gov/sites/default/files/assets/documents/2022-Sep/202994%20-%20FY%202021%20IPR%20Seizure%20Statistics%20BOOK.5%20-%20FINAL%20%28508%29.pdf) at 23. A true and correct copy of CBP's FY 2021 report is attached hereto as **Exhibit 3**. In FY 2021, there were 213 million express mail shipments and 94 million international mail shipments. *Id*. Nearly 90 percent of all intellectual property seizures occur in the international mail and express environments. *Id* at 27. The "overwhelming volume of small packages also makes CBP's ability to identify and interdict high-risk packages difficult." *Id*. at 23.

20. Further, counterfeiters such as Defendant typically operate multiple credit card merchant accounts and third-party accounts, such as and not limited to, PayPal, Inc. ("PayPal") accounts, behind layers of payment gateways so that they can continue operating despite Plaintiff's enforcement efforts. Upon information and belief, Defendant maintains off-shore bank accounts and regularly move funds from its PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

21. Upon information and belief, Defendant also deceives unknowing consumers by using the PINK FLOYD Trademarks without authorization within the content, text, and/or meta tags of its website to attract various search engines crawling the Internet looking for websites relevant to consumer searches for PINK FLOYD Products. Additionally, upon information and belief, Defendant uses other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Domain Name listings show up at or near the top of relevant search results and misdirect consumers searching for genuine PINK FLOYD Products. Further, Defendant utilizes similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down.

22. Defendant's use of the PINK FLOYD Trademarks on or in connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake and deception by and among consumers and is irreparably harming Plaintiff. Defendant has manufactured, imported, distributed, offered for sale and sold Counterfeit Products using the PINK FLOYD Trademarks and continues to do so.

23. Defendant, without authorization or license from Plaintiff, knowingly and willfully used and continues to use the PINK FLOYD Trademarks in connection with the advertisement, offer for sale and sale of the Counterfeit Products, through, inter alia, the internet. The Counterfeit Products are not genuine PINK FLOYD Plaintiff Products. Plaintiff did not manufacture, inspect or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. The Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, the Defendant has sold Counterfeit Products into the United States, including Illinois.

24. Upon information and belief, Defendant will continue to register or acquire domain names for the purpose of selling Counterfeit Goods that infringe upon the PINK FLOYD Trademarks unless preliminarily and permanently enjoined.

25. Defendant's use of the PINK FLOYD Trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit PINK FLOYD Products, including the sale of counterfeit PINK FLOYD Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

27. This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of the registered PINK FLOYD Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The PINK FLOYD Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the PINK FLOYD Trademarks.

28. Defendant has sold, offered to sell, marketed, distributed, and advertised, and is still selling, offering to sell, marketing, distributing, and advertising products in connection with the PINK FLOYD Trademarks without Plaintiff's permission.

29. Plaintiff is the exclusive owner of the PINK FLOYD Trademarks. Plaintiff's United States Registrations for the PINK FLOYD Trademarks (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendant has knowledge of Plaintiff's rights in the PINK FLOYD

10

Trademarks, and is willfully infringing and intentionally using counterfeits of the PINK FLOYD Trademarks. Defendant's willful, intentional and unauthorized use of the PINK FLOYD Trademarks is likely to cause and is causing confusion, mistake and deception as to the origin and quality of the counterfeit goods among the general public.

30. Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Plaintiff has no adequate remedy at law, and if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known PINK FLOYD Trademarks.

32. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit PINK FLOYD Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

34. Defendant's promotion, marketing, offering for sale, and sale of counterfeit PINK FLOYD products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendant's counterfeit PINK FLOYD Products by Plaintiff.

35. By using the PINK FLOYD Trademarks in connection with the sale of counterfeit PINK FLOYD products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit PINK FLOYD products.

36. Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit PINK FLOYD products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. Plaintiff has no adequate remedy at law and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1) That Defendant, its affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with it be temporarily preliminarily, and permanently enjoined and restrained from:

   a. using the PINK FLOYD Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PINK FLOYD Product or is not authorized by Plaintiff to be sold in connection with the PINK FLOYD Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine PINK FLOYD Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the PINK FLOYD Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendant's counterfeit PINK FLOYD Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d.  further infringing the PINK FLOYD Trademarks and damaging Plaintiff's goodwill;

    e.  otherwise competing unfairly with Plaintiff in any manner;

    f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff trademarks, including the PINK FLOYD Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

    g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Store, Defendant Domain Name, or any other domain names or online marketplace account that is being used to sell or is the means by which Defendant could continue to sell counterfeit PINK FLOYD Products; and

    h.  operating and/or hosting websites at the Defendant Domain Name and any online marketplace accounts registered or operated by Defendant that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the PINK FLOYD Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine PINK FLOYD Product or not authorized by Plaintiff to be sold in connection with the PINK FLOYD Trademarks.

2) That Defendant, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendant has complied with paragraph 1, a through h, above;

3) Entry of an Order that, at Plaintiff's choosing, the registrants of Defendant Domain Name shall be changed from the current registrants to Plaintiff, and that the domain name registries for the

Defendant Domain Name, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Name to a registrar of Plaintiff's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Name to a registrar account of Plaintiff's selection; or that the same domain name registries shall disable Defendant Domain Name and make them inactive and untransferable;4) Entry of an Order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Name, and online marketplace account registrars, shall:

a. disable and cease providing services for any accounts through which Defendant engages in the sale of counterfeit PINK FLOYD products using the PINK FLOYD Trademarks, including any accounts associated with the Defendant;

b. disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of counterfeit PINK FLOYD Products using the PINK FLOYD Trademarks; and

c. take all steps necessary to prevent links to the Defendant Domain Name identified as floydology.com from displaying in search results, including, but not limited to, removing links to the Defendant Domain Name from any search index;

5) That Defendant accounts for and pays to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for

infringement of the PINK FLOYD Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the PINK FLOYD Trademarks;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

DATED: December 18, 2023

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
33 West Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail: keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**