IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PINK FLOYD (1987) LIMITED,

    Plaintiff,

v.

THE OWNER AND/OR OPERATOR OF FLOYDOLOGY.COM,

    Defendant.

Case No.: 1:23-cv-16864

Judge Sharon Johnson Coleman

Magistrate Judge Jeffrey T. Gilbert

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DEFENDANT IDENTIFIED AS THE OWNER AND/OR OPERATOR OF FLOYDOLOGY.COM**

Plaintiff, PINK FLOYD (1987) LIMITED, ("PFL" or "Plaintiff"), submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Owner and/or Operator of floydology.com (the "Defaulting Defendant") based on Plaintiff's action for trademark infringement and counterfeiting (Count I) and false designation of origin (Count II).

PINK FLOYD (1987) LIMITED is the business entity for the iconic band PINK FLOYD. [1] at ¶ 10. It is a limited company having its principal place of business in the United Kingdom. *Id.* Since the initial launch of its original PINK FLOYD brand products, Plaintiff's PINK FLOYD marks are and have been the subject of continuous marketing and promotion by Plaintiff. *See Id.* at ¶¶ 11-14. The U.S. registrations for the PINK FLOYD Trademarks have been continuously used and never abandoned. *Id.* at ¶ 13.

On information and belief, the Defendant created the website identified as floydology.com and designed it to appear to be selling genuine PINK FLOYD Products, while selling inferior imitations of Plaintiff's products. *Id.* at ¶ 8. Defaulting Defendant conducts business throughout the

United States, including within the State of Illinois and this judicial district, through the operation of the fully interactive commercial internet store operating under the domain name ("Defendant Domain Name") identified as floydology.com (the "Defendant Internet Store"). *Id*. at ¶¶ 2, 15. Defaulting Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit PINK FLOYD Products to consumers within the United States, including the State of Illinois. *Id*. Additional factual assertions applicable to the Defaulting Defendant are found in Paragraphs 16-26 of the Complaint are incorporated herein. *Id*. at ¶¶ 16-26.

Plaintiff filed this action on December 18, 2023, alleging, among other claims, federal trademark infringement and seeks statutory damages and injunctive relief. [1]. On January 9, 2024, this Court granted Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") [17] and subsequently converted the TRO into a Preliminary Injunction on January 23, 2024. [24].

Paragraph 14 of the TRO permitted PFL to complete service of process to Defendant by electronically publishing a link to the Complaint, this Order and other relevant documents on a website or by sending an e-mail to the e-mail addresses identified in Exhibit 2 to the Declaration of Thomas Schlegel and any e-mail addresses provided for Defendant by third parties that includes a link to said website. The Defendant identified as the Owner and/or Operator of floydology.com associated with PayPal, Inc. ("PayPal") accounts was properly served on January 12, 2024. [22]. The Defaulting Defendant has not entered an appearance or otherwise defended this action. *See* Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), PFL now moves this Court for an Order entering default and default judgment finding that Defaulting Defendant is liable on

Counts I and II of PFL's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). PFL further seeks an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against the Defaulting Defendant for use of infringing and counterfeit PINK FLOYD Trademarks in connection with products sold through the Defendant Internet Store. PFL also seeks entry of a permanent injunction prohibiting Defaulting Defendant from selling Counterfeit/Infringing Products, and that all assets in Defaulting Defendant's financial accounts operated by PayPal, as well as any newly discovered assets, be transferred to PFL. Plaintiff also requests the court cancel, or at Plaintiff's election, transfer the Defendant Domain Name to Plaintiff, assign all rights, title, and interest, to the Defendant Domain Name to Plaintiff, and permanently disable, delist, or deindex the Defendant Domain Name from all search engines, in order to ensure the associated website may no longer be used as a means for selling goods bearing counterfeit and infringing versions of Plaintiff's trademarks and infringing upon Plaintiff's rights.

## ARGUMENT

**I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant because Defendant directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this judicial district. *See uBID, Inc. v. GoDaddy Grp., Inc*. 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the Defendant Internet Store operating under the Defendant Domain Name, the Defaulting Defendant has targeted sales from Illinois residents by operating commercial, interactive internet stores that offer shipping to the United States, including Illinois and, on information and belief, has sold Counterfeit/Infringing Products to residents within the United States, including Illinois. [1] at ¶¶ 2, 15. As such, personal jurisdiction is proper since the Defaulting Defendant is committing tortious acts in Illinois, is engaging in interstate commerce and has wrongfully caused Plaintiff substantial injury in the State of Illinois. 735 ILCS 5/2-209(a)(2). *See, e.g., NBA Properties, Inc. v. HANWJH*, No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022) (concluding that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers); *see e.g., Curry v. Revolution Labs., LLC,* 949 F.3d 385, 399 (7th Cir. 2020); *Tommy Hilfiger Licensing LLC et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 1:20-cv-07477 (N.D. Ill. Mar. 24, 2021) (Docket Entry 46); *see also, Pink Floyd (1987) Limited v. The Owner and/or Operator of werock.shop*, No. 23-cv-15536 (N.D. Ill. Dec. 20, 2023) and *Pink Floyd (1987) Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 23-cv-14631 (N.D. Ill. Dec. 3, 2023).

## II. PFL HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On December 18, 2023, PFL filed its Complaint alleging, among other claims, federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I), and false designation of origin, 15 U.S.C. § 1125(a) (Count II). The Defendant was properly served on January 12, 2024.

[22]. Despite having been served with process, the Defaulting Defendant has ignored these proceedings and failed to plead or otherwise defend this action. Vogt Declaration at ¶ 2. Upon information and belief, the Defaulting Defendant is not an active-duty member of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, PFL asks for entry of default against the Defaulting Defendant.

### III. PFL HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

At least twenty-one (21) days have passed since Defendant was served, and no answer or other responsive pleading has been filed by the Defaulting Defendant. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate and, consistent with previous similar cases in front of this Court, PFL requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark infringement and counterfeiting against the Defaulting Defendant for use of infringing and counterfeit imitations of PFL's PINK FLOYD Trademarks in connection with products sold through the commercial, interactive internet website operating at the Defendant Domain Name. Plaintiff seeks to cancel, or at Plaintiff's election, transfer the Defendant Domain Name to Plaintiff, assign all rights, title, and interest, to the Defendant Domain Name to Plaintiff, and permanently disable, delist, or deindex the Defendant Domain Name from all search engines, in order to ensure the associated websites may no longer be used

as a means for selling goods bearing counterfeit and infringing versions of Plaintiff's trademarks and infringing upon Plaintiff's rights. PFL also seeks entry of a permanent injunction prohibiting Defaulting Defendant from selling Counterfeit/Infringing Products, and that all assets in Defaulting Defendant's financial accounts operated by PayPal and any newly identified accounts be transferred to PFL.

      A.      **Trademark Infringement and Counterfeiting**

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001)).

PFL alleged in its Complaint that its PINK FLOYD Trademarks are distinctive, that Defaulting Defendant has knowledge of PFL's rights in the PINK FLOYD Trademarks, that Defaulting Defendant is not authorized to use the PINK FLOYD Trademarks, and that Defaulting Defendant's use of the PINK FLOYD Trademarks causes a likelihood of confusion. [1] at ¶¶ 27-33. Since the Defaulting Defendant has failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in PFL's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, PFL requests entry of judgment with respect to Count I for willful infringement and counterfeiting of the PINK FLOYD Trademarks against the Defaulting Defendant.

### B. False Designation of Origin

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for bringing a trademark infringement claim under the Lanham Act. *See Neopost,* 403 F. Supp. 2d at 684.

PFL alleged in its Complaint that Defaulting Defendant is using the federally registered PINK FLOYD Trademarks without authorization on the Counterfeit/Infringing Products. This creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with PFL or the origin, sponsorship, or approval of Defaulting Defendant's Counterfeit/Infringing Products by PFL. [1] at ¶¶ 34-38. Furthermore, by using the PINK FLOYD Trademarks on the Counterfeit/Infringing Products, Defaulting Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Counterfeit/Infringing Products. *Id*. As a result, PFL requests entry of judgment with respect to Count II for willful false designation of origin against the Defaulting Defendant.

### IV. PFL IS ENTITLED TO MONETARY DAMAGES AND INJUNCTIVE RELIEF

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible harm to consumers who are

tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations.

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). In *Sara Lee*, 36 F. Supp. 2d at 170, the court awarded statutory damages in the amount of $750,000 after estimating the defendants' ill-gotten gains and trebling them to "deter and punish a willful continuous course of infringements and defiance of the judicial process." The *Sara Lee* analysis included seven factors: (1) the profits made by the defendants; (2) the revenues lost by plaintiff; (3) the value of the mark; (4) the deterrent effect on others; (5) whether the conduct was innocent or willful; (6) whether a defendant has cooperated in providing records; and (7) the deterrent effect on the defendant.

The USPTO's Office of Policy and International Affairs and the National Telecommunications and Information Administration ("NTIA") together working as part of the Department of Commerce's Internet Policy Task Force conducted a review of the relationship between the availability and protection of online copyrighted works and innovation in the Internet economy. The Internet Policy Task Force's White Paper on Remixes, First Sale, and Statutory Damages (White Paper) was published on January of 2016, (See, Exhibit 1), which recognizes in copyright law that reduced damages may be warranted to avoid impeding new creative works, e.g., remixes -- works created through changing and combining existing works to produce something new and creative -- as part of a trend of user generated content. *Id*. at 98. However, in cases of willful infringement, such as before this Court, the same report finds that high statutory damages are warranted since "[t]hese circumstances present the clearest need for deterrence and punishment. *Id*. at 99. Moreover, regarding straight-out counterfeiting where impeding creativity is not a concern, The Office of the U. S. Trade Representative issued findings of the Special 301 Out-of-Cycle Review of Notorious Markets for 2015, December 2015 (*See*, Exhibit 2), highlighted disturbing trends in the marketing and distribution of counterfeit goods online, with escalating levels of counterfeit sales online including an increase in the services that support such operations.

Accordingly, a significant consideration should be whether infringing sales were made over the internet, with the rationale was that sales over the Internet increased the amount of an award because use of the Internet made the infringement widely available.

The lack of information regarding Defaulting Defendant's sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *See Petmed Express, Inc. v. medpets.com, Inc.,* 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Likewise, Courts

9

have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### B. Defendant's Counterfeiting Was Willful

As alleged in PFL's Complaint, Defaulting Defendant facilitates sales by deceiving consumers by using the PINK FLOYD Trademarks without authorization on its website to attract consumers searching for PINK FLOYD Products. [1] at ¶¶ 19, 22. Defaulting Defendant also deceives unknowing consumers by using the PINK FLOYD Trademarks without authorization within the content, text, and/or meta tags of its website to attract various search engines crawling the internet looking for websites relevant to consumer searches for PINK FLOYD Products. *Id.* at ¶ 22. Additionally, upon information and belief, Defendant uses other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Domain Name shows up at or near the top of relevant search results and misdirect consumers searching for genuine PINK FLOYD Products. *Id.*

It is clear that Defaulting Defendant's counterfeiting was willful. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. In the instant case, Defaulting Defendant clearly had knowledge that its activities constituted infringement or at least a reckless disregard for PFL's rights in the PINK FLOYD Trademarks, especially given PFL's extensive promotional efforts discussed above.

Finally, this Court has deemed counterfeiting willful when defendants default. *See, e.g., Pink Floyd (1987) Limited v. The Owner and/or Operator of werock.shop*, No. 23-cv-15536 (N.D. Ill. Dec. 20, 2023) and *Pink Floyd (1987) Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 23-cv-14631 (N.D. Ill. Dec. 3, 2023).

### C. A High Statutory Damages Award Is Appropriate and Just

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful internet-based counterfeiting, this Court has awarded significant damages to the plaintiff to serve the purposes of: (1) deterring the defendant and others

11

situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Pink Floyd (1987) Limited v. The Owner and/or Operator of werock.shop*, No. 23-cv-15536 (N.D. Ill. Dec. 20, 2023) and *Pink Floyd (1987) Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 23-cv-14631 (N.D. Ill. Dec. 3, 2023). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), PFL respectfully requests the Court's entry of an award of two hundred fifty thousand dollars ($250,000) against Defaulting Defendant as it has done in the past under similar circumstances.

### D. PFL is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, PFL respectfully requests entry of a permanent injunction enjoining Defaulting Defendant from infringing or otherwise violating PFL's registered trademark rights in the PINK FLOYD Trademarks, including at least all injunctive relief previously awarded by this Court to PFL in the TRO. PFL is also entitled to injunctive relief so it can quickly take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendant, and selling Counterfeit PINK FLOYD Products. *See, e.g., Pink Floyd (1987) Limited v. The Owner and/or Operator of werock.shop*, No. 23-cv-15536 (N.D. Ill. Dec. 20, 2023) and *Pink Floyd (1987) Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 23-cv-14631 (N.D. Ill. Dec. 3, 2023).

## V. CONCLUSION

PFL respectfully requests that the Court enter default and default judgment against Defaulting Defendant, award statutory damages in the amount of two hundred fifty thousand dollars ($250,000) against Defaulting Defendant pursuant to 15 U.S.C. § 1117(c) and enter a permanent injunction order prohibiting Defaulting Defendant from selling Counterfeit/Infringing Products, and transferring all assets in Defaulting Defendant's financial accounts operated by PayPal to PFL. Plaintiff also requests the court cancel, or at Plaintiff's election, transfer the Defendant Domain Name to Plaintiff, assign all rights, title, and interest to the Defendant Domain Name to Plaintiff, and permanently disable, delist, or deindex the Defendant Domain Name from all search engines, in order to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits and infringements of Plaintiff's trademarks and infringing upon Plaintiff's rights.

DATED: February 13, 2024            Respectfully submitted,

/s/ Keith A. Vogt
Keith A. Vogt, Esq. (Bar No. 6207971)
Keith Vogt, Ltd.
33 West Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail: keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 13, 2024, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to the e-mail addresses identified in Exhibit 2 to the Declaration of Thomas Schlegel and any e-mail addresses provided for Defendant by third parties that includes a link to said website.

                                                    /s/ *Keith A. Vogt*
                                                    Keith A. Vogt